# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**AURELIO REALIVASQUEZ**,

      Plaintiff,

      vs.                             **CIV. NO.  03-0015 MCA/KBM**

**THE CITY OF ALBUQUERQUE**,
a body corporate,
**MATTHEW THOMPSON**,
in his official and individual capacities,
**MICHAEL ARCHIBEQUE**,
in his official and individual capacities,
and **PATRICK K. APODACA**,
in his official and individual capacities,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the following motions:  (1) *Defendant's Motion in Limine No. 1:  Motion to Exclude Evidence of Any Allegations of Prior and Subsequent Bad Acts and Any Introduction of Evidence from Other Cases or Claims Brought Against Defendants* [Doc. No. 51] filed on February 20, 2004; (2) *Defendants' Motion in Limine No. II:  Motion to Exclude Evidence Regarding Alleged Violation of Police Standard Operating Procedures* [Doc. No. 53] filed on February 20, 2004; (3) *Defendants' Motion in Limine No. III:  Motion to Exclude Evidence of the Results from*

*Plaintiff's Underlying Criminal Case* [Doc. No. 55] filed on February 20, 2004; and (4) *Plaintiff's Motion in Limine* [Doc. No. 57] filed on February 24, 2004. The Court held a hearing on the above motions on March 8, 2004. Having considered the submissions of the parties, the relevant law, and otherwise being fully advised in the premises, the Court finds that the motions are well taken and that the proposed evidence concerning the contents of certain police internal affairs files, police standard operating procedures, and the results of Plaintiff's underlying criminal case and the test of his blood-alcohol content are not admissible under the Federal Rules of Evidence. The Court's rulings in this regard are subject to reconsideration in the event that unforeseen circumstances arise during trial.

## I.   <u>BACKGROUND</u>

Pursuant to the *Memorandum Opinion and Order* [Doc. No. 47] filed on January 28, 2004, the only claims that remain pending against Defendants in this matter are (1) Plaintiff's state-law claim of battery against Defendants Thompson, Archibeque, and Apodaca; (2) Plaintiff's state-law claim of negligent supervision against Defendant Apodaca; and (3) Plaintiff's claim under 42 U.S.C. § 1983 that Defendants Thompson, Archibeque, and Apodaca used, or participated in the use of, excessive force in violation of the Fourth Amendment to the United States Constitution. All of the above claims arise from the events of December 3, 2000, when Plaintiff's arm was broken during an altercation with Defendants Thompson, Archibeque, and Apodaca during a traffic stop.

In response to Defendants' motions in limine, and in the parties' joint exhibit list, Plaintiff indicates that he intends to offer into evidence the contents of certain internal affairs

files of the Albuquerque Police Department, certain standard operating procedures of that department, and the results of the underlying criminal action in state court that resulted from his arrest on December 3, 2000. Plaintiff claims that this evidence is relevant under Fed. R. Evid. 401 and 402, and is admissible to establish motive, intent, state of mind, and absence of mistake or accident under Fed. R. Evid. 404(b), and/or for impeachment purposes under Fed. R. Evid. 608.

In response to Plaintiff's motion in limine, and in the parties' joint exhibit list, Defendants indicate that they intend to offer into evidence the results of a test of Plaintiff's blood-alcohol content that was administered in the hospital after Plaintiff's arrest on December 3, 2000. Defendants claim that this evidence is relevant and admissible for three purposes: (1) to attack his credibility and his ability to perceive the events in question; (2) to show motive or intent under Fed. R. Evid. 404(b); and (3) to rebut any claim for damages for emotional distress.

## II.   <u>ANALYSIS</u>

The Court's first inquiry is whether the evidence that is the subject of the parties' motions in limine is relevant under the legal standard that the Court is required to apply in excessive-force cases. The standard for determining whether Defendants' use of force in this case was unreasonable or excessive is defined by the interpretation of the Fourth Amendment provided by the Supreme Court and the Tenth Circuit. See generally Medina v. Cram, 252 F.3d 1124, 1133 (10th Cir. 2001); Romero v. Bd. of County Comm'rs., 60 F.3d 702, 705 (10th Cir. 1995); Wilson v. Meeks, 52 F.3d 1547, 1554 (10th Cir. 1995), abrogated on other

grounds by <u>Saucier v. Katz</u>, 533 U.S. 194 (2001).  In particular, Plaintiff's excessive-force claim under 42 U.S.C. § 1983 must be analyzed under the Fourth Amendment standard of "objective reasonableness" as articulated by the Supreme Court in <u>Graham v. Connor</u>, 490 U.S. 386 (1989).

The subjective intentions or state of mind of the Plaintiff or the individual Defendants are not relevant to determining whether an officer's use of force is objectively reasonable under the Fourth Amendment.  <u>See</u> <u>Arkansas v. Sullivan</u>, 532 U.S. 769, 771-72 (2001); <u>United States v. Sanchez</u>, 89 F.3d 715, 718 (10th Cir. 1996).  Rather, "the reasonableness of an officer's conduct must be assessed 'from the perspective of a reasonable officer on the scene,' recognizing the fact that the officer may be 'forced to make split-second judgments' under stressful and dangerous conditions." <u>Medina</u>, 252 F.3d at 1131 (quoting <u>Graham</u>, 490 U.S. at 396-97).  This assessment must be "based upon the information the officers had when the conduct occurred,"  <u>Saucier</u>, 533 U.S. at 207, and is not to be judged "with the 20/20 vision of hindsight," <u>Graham</u>, 490 U.S. at 396; <u>see</u> <u>Kopf v. Skyrm</u>, 993 F.2d 374, 379 (4th Cir. 1993) (concluding that so long as "probable cause is present, the actual guilt or innocence of the arrestee is irrelevant to the amount of force that may be used").

### A.    <u>Standard Operating Procedures</u>

It follows that the "objective reasonableness" of Defendants' use of force in this case is not measured by the standard operating procedures promulgated by the City of Albuquerque's Police Department.  The fact that an officer did not comply with his or her employer's standard operating procedures, or did not use a less intrusive alternative means

of detaining or disarming a suspect, does not necessarily mean that the officer's conduct was "unreasonable" under the Fourth Amendment.  See Medina, 252 F.3d at 1133; Romero, 60 F.3d at 705; Wilson, 52 F.3d at 1554.  Accordingly, the Court concludes that the parties may not use evidence of standard operating procedures in order to supplant the test of objective reasonableness that has been defined by the Supreme Court and the Tenth Circuit.

The Court further finds that evidence of standard operating procedures is not particularly probative in this case, and the minimal probative value of such evidence is substantially outweighed by the danger of confusing the jury as to the applicable legal standard for determining the reasonableness of Defendants' conduct.  See Fed. R. Evid. 403. This balancing under Fed. R. Evid. 403 applies to the use of such evidence for impeachment purposes as well.

**B.     Results of Criminal Prosecution**

The results of the criminal prosecution of Plaintiff that followed his arrest on or about December 3, 2000, are not relevant or admissible at trial for the following reasons.  First, as noted above, the assessment of whether Defendants' conduct is objectively reasonable is not to be judged "with the 20/20 vision of hindsight," Graham, 490 U.S. at 396.  Second, it is not relevant whether Plaintiff was or was not convicted of any particular criminal offense as a result of the arrest on December 3, 2000, because an arrest only requires "probable cause to believe 'an offense' had been committed."  United States v. Edwards, 242 F.3d 928, 935 (10th Cir. 2001) (quoting United States v. Maher, 919 F.2d 1482, 1485 (10th Cir. 1990)). The probable-cause standard does "'not require the same type of specific evidence of each

element of the offense as would be needed to support a conviction.'" <u>United States v.</u> <u>Pollack</u>, 895 F.2d 686, 691 (10th Cir. 1990) (quoting <u>Adams</u>, 407 U.S. at 148-49). So long as "probable cause is present, the actual guilt or innocence of the arrestee is irrelevant to the amount of force that may be used." <u>Kopf</u>, 993 F.2d at 379. In this case, the Court already has determined that probable cause was present in ruling on Defendants' summary-judgment motions.

The Court further finds that evidence of the results of the criminal prosecution is not particularly probative in this case, and the minimal probative value of such evidence is substantially outweighed by the danger of confusing the jury as to the applicable legal standard for determining the reasonableness of Defendants' conduct and the need to avoid a mini-trial on collateral issues concerning whether the criminal offenses with which Plaintiff was charged were supported by probable cause. <u>See</u> Fed. R. Evid. 403. This balancing under Fed. R. Evid. 403 applies to the use of such evidence for impeachment purposes as well.

**C.     Test Results of Plaintiff's Blood-Alcohol Content**

For the following reasons, the results of the test of Plaintiff's blood-alcohol content at the hospital where he was taken following his arrest on or about December 3, 2000, are not relevant or admissible at trial under the current posture of the case. First, these test results are not admissible for the purpose of showing Plaintiff's motive or intent because, as noted above, the subjective intentions or state of mind of the Plaintiff or the individual

-6-

Defendants are not relevant to determining whether an officer's use of force is objectively reasonable under the Fourth Amendment.  See Sullivan, 532 U.S. at 771-72; Sanchez, 89 F.3d at 718.  Second, the assessment of whether Defendants acted reasonably must be "based upon the information the officers had when the conduct occurred," Saucier, 533 U.S. at 207, and in this case, the Defendants did not have the test results at the time of their allegedly excessive use of force.  Because Defendants did not know of these results at the time they allegedly used excessive force to arrest and handcuff Plaintiff, they cannot use these results at trial to justify their action after the fact.[1]

On the other hand, to the extent that Defendants were aware that Plaintiff displayed other symptoms indicating that he was under the influence of alcohol at the time of the allegedly excessive use of force (such as smelling or alcohol or slurring his speech), they may so testify because Defendants' observations of Plaintiff's demeanor during that period form part of the "totality of the circumstances" under which the reasonableness of their conduct is to be judged.  Further, to the extent that Plaintiff's testimony concerning his alcohol consumption prior to the incident in question is inconsistent to a significant degree with the results of the test of his blood-alcohol content, the Court may reconsider its ruling

---

[1]With regard to Defendant's contention that Plaintiff's blood-alcohol content is relevant to determining his damages in the form of mental or emotional distress, the Court notes that Plaintiff's requested jury instruction on damages does not assert a claim for mental or emotional distress.  [Doc. No. 65.]

and, depending on the context that arises during trial, allow some questioning as to Plaintiff's blood-alcohol content for the limited purpose of impeachment.

### D.    Contents of Internal-Affairs Files

Evidence concerning the contents of the individual Defendants' internal-affairs files are not relevant or admissible at trial for the following reasons.  The Court has previously granted summary judgment in Defendants' favor as to all claims of municipal liability and all claims of supervisory liability that arose from acts or omissions prior to Defendant Apodaca's arrival on the scene.  This prior ruling also largely eliminates any need for evidence concerning standard operating procedures or a supervisory or municipal Defendant's knowledge of the contents of a subordinate officer's internal-affairs file.  Events that transpired before the incident in question are not relevant to the remaining claims against the individual Defendants.  See generally Medina, 252 F.3d at 1133; Romero, 60 F.3d at 705; Wilson, 52 F.3d at 1554.

The reasonableness of the individual Defendants' conduct is to judged from the information that was before the officers in question at the time of their allegedly excessive use of force, not from information about other incidents in which these officers may have been involved.  See Graham, 490 U.S. at 396.   Similarly, evidence of the individual Defendants' other acts  is not admissible for the purpose of showing their subjective intent or motives in the present case because their subjective intent or motives is not a factor under the "objective reasonableness" test.  See Sullivan, 532 U.S. at 771-72; Sanchez, 89 F.3d at

-8-

718.  Any minimal probative value of such evidence is outweighed by the danger of unfair prejudice, confusion of the jury as to the applicable legal standard, and the need to avoid a mini-trial on collateral issues.  See Fed. R. Evid. 403.

The pendency of Plaintiff's battery claim and his negligent supervision claim against Defendant Apodaca does not change this conclusion because the reasonableness of Defendants' conduct also is central to these state-law claims.  The intentional application of force to another person does not constitute battery unless it is unlawful, see N.M.Stat. Ann. § 30-3-4 (Michie 1978); Caillouette v. Hercules, Inc., 113 N.M. 492, 496-97, 827 P.2d 1306, 1310-11 (Ct. App. 1992), and police officers are not liable for battery if they acted in good faith and did not use more force than reasonably necessary to preserve the peace or effect an arrest, see State v. Gonzales, 97 N.M. 607, 610, 642 P.2d 210, 213 (Ct. App. 1982); Mead v. O'Connor, 66 N.M. 170, 173, 344 P.2d 478, 479-80 (1959).  Further, unless the jury first finds that Defendants Thompson or Archibeque used excessive force or committed a battery, Defendant Apodaca cannot be held liable for the negligent supervision of Defendants Thompson or Archibeque because the New Mexico Tort Claims Act does not waive sovereign immunity for simple negligence of law enforcement officers absent an underlying enumerated tort or civil-rights violation by a subordinate officer.  See Caillouette, 113 N.M. at 496-97, 827 P.2d at 1310-11; Methola v. County of Eddy, 95 N.M. 329, 333, 622 P.2d 234, 237 (1980); McDermitt v. Corrections Corp. of Am., 112 N.M. 247, 249, 814 P.2d 115, 117 (Ct. App. 1991).

-9-

It is true that an officer's subjective intentions may come into play insofar as the officer's good faith is relevant to the battery claim under state law, see Gonzales, 97 N.M. at 610, 642 P.2d at 213, and insofar as the officer's bad faith may provide grounds for awarding punitive damages, see generally Smith v. Wade, 461 U.S. 30 (1983).  Given the fact that the only incidents reported in Defendant Apodaca's internal-affairs file which have any relevance to this issue are more than ten years old, however, the Court determines that their minimal probative value is substantially outweighed by the danger of unfair prejudice and confusing the jury with a series of "mini-trials" on unrelated incidents that transpired several years before the incident in question.  See Fed. R. Evid. 403.

As for the incident regarding Defendant Thompson's alleged failure to turn on his belt tape, the Court will permit counsel to ask this Defendant whether he turned on his belt tape and to explain why he did not do so.  Applying Fed. R. Evid. 403, however, the Court will exclude evidence of any disciplinary action relating to this omission that is contained in Defendant Thompson's internal-affairs file.  Defendant Thompson is not on trial for failing to turn on his belt tape or destroying any belt-tape recording.  The absence of a belt-tape recording is a collateral issue that only goes to Defendant Thompson's credibility, and any disciplinary action resulting from this omission is not probative of whether any of the Defendants used excessive force, committed a battery, or engaged in negligent supervision with respect to a battery or an excessive use of force.  See Wilson, 52 F.3d at 1557-58.

Additionally, the Court rejects Plaintiff's contention that the contents of the individual Defendants' internal-affairs files are somehow relevant and permissible areas of inquiry for impeachment purposes.  The contents of internal-affairs files are not "evidence in the form of opinion or reputation" under Fed. R. Evid. 608(a), and Fed. R. Evid. 608(b) does not permit specific instances of conduct to be "proved by extrinsic evidence" unless they are criminal convictions under Fed. R. Evid. 609.  Even criminal convictions generally are not admissible under Fed. R. Evid. 609 if they are more than ten years old.  Finally, impeachment evidence is still governed by the balancing test provided in Fed. R. Evid. 403, and in this instance, this balancing weighs heavily in favor of excluding evidence concerning the contents of the individual Defendants' internal-affairs files.

As with any pretrial ruling on a motion in limine, the Court reserves the right to reconsider the issue should unforeseeable circumstances arise during the trial.  For example, should a party seeking to exclude evidence concerning a particular topic by means of a motion in limine end up volunteering information about that topic during his or her trial testimony, then the door may be opened to further questioning about that topic by opposing counsel, particularly if the testimony is inconsistent with a prior statement by the same witness.

III.   **CONCLUSION**

For the foregoing reasons and the reasons stated on the record at the hearing on March 8, 2004, the Court concludes that the parties' motions in limine are well taken, subject to the caveats mentioned above.

**IT IS, THEREFORE, ORDERED** that *Defendant's Motion in Limine No. 1: Motion to Exclude Evidence of Any Allegations of Prior and Subsequent Bad Acts and Any Introduction of Evidence from Other Cases or Claims Brought Against Defendants* [Doc. No. 51] is **GRANTED** under the conditions specified herein.

**IT IS FURTHER ORDERED** that *Defendants' Motion in Limine No. II: Motion to Exclude Evidence Regarding Alleged Violation of Police Standard Operating Procedures* [Doc. No. 53] is **GRANTED** under the conditions specified herein.

**IT IS FURTHER ORDERED** that *Defendants' Motion in Limine No. III: Motion to Exclude Evidence of the Results from Plaintiff's Underlying Criminal Case* [Doc. No. 55] is **GRANTED** under the conditions specified herein.

**IT IS FURTHER ORDERED** that *Plaintiff's Motion in Limine* [Doc. No. 57] is **GRANTED** under the conditions specified herein.

**SO ORDERED**, this 8th day of March, 2004, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
*United States District Judge*